IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DENISE CALLENS           )
                         )
     Plaintiff,          )
                         )
v.                       )     Civil Action No. 1:10-cv-842
                         )
WASHINGTON METROPOLITAN AREA )
TRANSIT AUTHORITY        )
                         )
     Defendant.          )

### Memorandum Opinion

This matter comes before the Court on Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Amended Motion for Summary Judgment.

Plaintiff Denise Brooks Callens, a white female, was hired on January 7, 1997 as a WMATA bus operator and became a WMATA train operator in January 2004. Plaintiff was assigned to the West Falls Church Metrorail Operations Division. Plaintiff last reported to work at WMATA on September 9, 2009, on which day Plaintiff filed a workers' compensation claim alleging work related stress, which is currently pending before the District of Columbia Office of Administrative Hearings, Department of Employment Services. Plaintiff's employment status with WMATA is currently "inactive."

On November 15, 2006, Plaintiff filed an Intake Questionnaire with the Equal Employment Opportunity Commission

("EEOC"). Plaintiff subsequently amended the allegations contained in the Intake Questionnaire with three Charges of Discrimination. Plaintiff filed her initial Charge of Discrimination with the EEOC on April 3, 2007. On June 1, 2007, Plaintiff filed her corrected Charge of Discrimination, which made minor changes to the initial Charge and alleged three specific acts of race discrimination, sex discrimination, and retaliation. The Charge alleged the following: (1) not initially being paid correctly by the depot clerk for Plaintiff's attendance at a November 15, 2006 meeting; (2) the manner of assignment of radios by the depot clerk in November 2006; and (3) the depot clerk's failure to identify the name of a person from WMATA's Safety Office who had called Plaintiff in November 2006, and the depot clerk's generally hostile treatment of Plaintiff. On August 1, 2007, Plaintiff filed her third Charge of Discrimination, which added a fourth allegation involving WMATA's handling of a incident in which Plaintiff reported the presence of urine in a train cab that she operated.

On May 7, 2007, the EEOC requested that WMATA respond to Plaintiff's first three allegations of discrimination, to which its Office of Civil Rights ("OCR") responded on June 28, 2007. On September 19, 2007, the EEOC requested that WMATA respond to Plaintiff's fourth allegation, to which its OCR responded on October 15, 2007. The EEOC further issued Plaintiff a right to

sue letter on September 30, 2009 but did not make any findings regarding the four claims contained in Plaintiff's Charges of Discrimination.

Plaintiff filed a subsequent Charge of Discrimination with the EEOC on October 8, 2009, alleging race discrimination, sex discrimination, and retaliation related to a September 9, 2009 incident regarding alleged signal malfunctions. Plaintiff believed that these malfunctions were a deliberate response to her earlier EEOC charge. Further, Plaintiff alleged that the supervisor's presence and activities interfered with the safe operation of the train and that Plaintiff requested that the supervisor take over operation of the train. On August 3, 2011, the EEOC issued a right to sue letter regarding Plaintiff's malfunctioning signal claims.

Plaintiff's Amended Complaint arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. In the Amended Complaint, Plaintiff alleges disparate treatment discrimination based on race in Count I, sex in Count II, and retaliation in Count III.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) the Supreme Court established a three-prong standard regarding the burden of proof in a Title VII case. First, the plaintiff must make a prima facie case of discrimination by showing that she is a member of a protected class and suffered

an adverse job detriment. Id. Second, assuming that a prima facie case has been made, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision. Id. at 802-03. Third, assuming that the defendant meets its burden, the plaintiff must prove that the reasons offered by the defendant were pretextual.

In Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 260 (1981), the Court expanded upon its ruling in McDonnell Douglas and held that the employer's burden is only to explain clearly the nondiscriminatory reasons for its actions. It stated that

> [t]he burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else preferred, for a legitimately, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons.

Burdine, 450 U.S. at 254.

After the employer has met its burden, the ultimate burden of persuasion returns to the plaintiff. In this regard, the Court stated that

> [t]he plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either by persuading the court that a discriminatory reason more likely motivated the

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Id. at 256.

This Court must grant summary judgment when a party fails to make a showing sufficient to establish the existence of any essential element of the party's case on which that party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). A movant need only show that there is an absence of evidence or support for the opposing party's case. See Celotex Corp., 477 U.S. at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

In the first of the four discrete allegations raised in Plaintiff's EEOC Charges of Discrimination, Plaintiff alleged

that she was not paid correctly for attending a November 15, 2006 meeting. However, in Plaintiff's November 18, 2006 memorandum attached to her August 1, 2007 Charge of Discrimination, Plaintiff acknowledged that the alleged pay miscalculation was corrected by November 17, 2007, resulting in Plaintiff receiving proper payment two days following her attendance of the meeting. Thus, any payment error was remedied soon after it occurred, and Plaintiff cannot prove any tangible adverse employment action as a result of this incident as she was promptly paid in full. Additionally, there is no evidence that this payment issue was motivated by race, sex, or retaliation.

In Plaintiff's second discrete allegation filed with the EEOC, Plaintiff claimed that she was denied radio handsets by a depot clerk. Plaintiff contends that a group of individuals, who referred to themselves as the "country club," would hide and trade off radios while denying Plaintiff radios. Although Plaintiff was aware that there were not enough handsets and radios for all train operators, Plaintiff claimed that she discovered some unassigned radios in the depot clerk's office. When Plaintiff requested that she be assigned a radio, the depot clerk allegedly assigned the radio to Plaintiff in a hostile manner. Plaintiff admits that although she had to exercise more effort than she believed should be necessary in order to obtain

radios, she was always assigned or was able to borrow one. Therefore, Plaintiff cannot prove any tangible adverse employment action.

Third, Plaintiff alleged in her EEOC Charge that the depot clerk failed to obtain the name of an individual from the WMATA Safety Office who made a telephone call to Plaintiff. Plaintiff believes this to be evidence of the hostile and unprofessional work environment in which Plaintiff worked, which eventually led to Plaintiff's taking time off from work due to illness. Plaintiff argues that the depot clerk should have obtained the caller's name because the call was regarding official WMATA business. However, WMATA policy prohibits the taking of personal calls for train operators or station managers by depot clerks, except for in emergencies. Further, Plaintiff admits that she was already aware of the Safety Office individual who made the call, as that individual was returning Plaintiff's call. Plaintiff can therefore not demonstrate any tangible adverse employment action, nor has Plaintiff put forth evidence to support the contention that this allegation was motivated by race, sex, or retaliation.

Fourth, Plaintiff complained that on November 17, 2006, she was required to operate her train after reporting that the cab contained urine. Plaintiff believes that her treatment with respect to the clean-up and assignment of a new train was

different than other employees. However, Plaintiff admits that she did not exercise her option to refuse to take the train and also that the presence of urine in train cabs is not uncommon. Plaintiff did not suffer any tangible adverse employment action as a result of this incident and cannot demonstrate that this incident was motivated by race, sex, or retaliation.

In Plaintiff's Amended Complaint, Plaintiff attempts to raise five additional issues: (1) WMATA's failure to select her for positions for which she applied between October 2, 2006 and August 19, 2002; (2) WMATA's assignment to Plaintiff of 5000-series train cars with inadequate heating; (3) the improper dropping of red signals in front of Plaintiff's trains; (4) WMATA's refusal to provide department transfer opportunities; and (5) that Plaintiff's co-workers made racially insensitive and derogatory remarks about Plaintiff.

In Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999), the Fourth Circuit stated that

> [i]t is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC. See Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) ("Where . . . claims raused under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.").

In Vasquez v. Potomac Hospital, Inc., No. 10-cv-216, 2010 WL 3984685, at *3 (E.D. Va. Oct. 8, 2010), this Court stated that

> [b]efore a plaintiff will have standing to file a suit under title VII, the plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. . . . The EEOC charge determines the scope of the plaintiff's ability to file a civil suit. . . . A plaintiff can only maintain "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" in a subsequent Title VII lawsuit. . . . Thus, a claim generally brought in a subsequent lawsuit will generally be barred if the EEOC charge alleges discrimination on a different basis. . . . A plaintiff's failure to exhaust the administrative remedies available will deprive the federal courts of subject matter jurisdiction over the claim in a later suit.

In this case, Plaintiff did not raise these additional issues in the Charges of Discrimination. Further, these additional claims are not reasonably related to the four discrete allegations addressed by the EEOC. Therefore, these additional claims must be barred due to Plaintiff's failure to exhaust the administrative remedies available to her.

The Fourth Circuit has held that "a plaintiff may raise the retaliation claim for the first time in federal court." Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). However, the Fourth Circuit has also stated that "[i]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will . . . be procedurally barred." Chacko v. Patuxent Inst.,

Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). In McDonald v. Loudoun County Board of Supervisors, No. 10-cv-449 2011 WL 3951621, at *2 (E.D. Va. Sept. 6, 2011), while citing the Chacko decision, this Court held that "[b]ecause Plaintiff did not lay a factual foundation in the Charge to support his claim of retaliation, Plaintiff's retaliation claim is barred." 2011 WL 3951621, at *2 (E.D. Va. Sept. 6, 2011). Similarly, in this case, the facts underlying Plaintiff's retaliation claims are insufficient to support those claims. Although Plaintiff checked the "retaliation" box in her Charges of Discrimination, those charges do not include sufficient factual assertions explaining the basis for the claims.

As Plaintiff limited her Charges to four discrete issues, the EEOC did not ask WMATA to investigate -- and WMATA did not investigate -- issues related to other allegations of retaliation against Plaintiff. While Plaintiff relies on a July 10, 2009 letter to the EEOC as manifesting "additional incidents of disparate treatment and subtle retaliation," these additional allegations do not rise to the level of tangible personnel action, were never included in any sworn Charges of Discrimination filed with the EEOC, and were not included in any of the items for which the EEOC requested a response by WMATA. Therefore, Plaintiff's claims are restricted to the four

discrete issues filed in her Charges of Discrimination, which also fail as insufficient.

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted. An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
January 18, 2012